THOMAS CARBINE

*v.*

WILLIAM C. MORRIS.

1. SHERIFF'S DEED—*as evidence of title, must be supported by a judgment.* In order to sustain a title under a sheriff's deed for land sold on execution, proof of the judgment upon which the execution issued is indispensable.

2. EVIDENCE—*to prove judgment.* The recitals of the certificate of purchase in a sheriff's deed are not competent evidence to establish the existence and contents of the judgment under which the sale was made.

3. JUDGMENT LIEN—*as to property parted with before its rendition.* Where the purchaser of two lots cancels his contract for their purchase, and takes a new contract for one of the lots only, and the original owner sells the other lot to a third person, who takes possession, before the recovery of a judgment

against the original purchaser, the judgment will create no lien upon the lot so taken back and sold to the second purchaser, and the sale of the same on execution issued upon such judgment will pass no title, and the sheriff's deed for such lot will be set aside as a cloud upon the title of the second purchaser.

4. JUDICIAL SALE—*of lot held under contract of purchase.* The purchaser of lots at sheriff's sale under execution, or his assignee taking a sheriff's deed, acquires the title and interest only which the judgment debtor had, and if the latter had only a contract of purchase not performed, such grantee must complete the debtor's contract of purchase, if he would hold the title; and where, subsequent to the lien of the judgment, another acquires a deed from the original vendor, and seeks to have the sheriff's deed set aside as a cloud upon his title, the sheriff's grantee must show, in order to defeat the relief sought, such a contract of purchase in favor of the debtor as can be specifically enforced in equity in his favor.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

Prior to, and on October 18, 1866, one Hull was the proprietor of two town lots described as 101 and 102, Hull's subdivision in one of the additions to Chicago.

On that day he entered into a contract with one O'Brien to sell to O'Brien these lots. The record shows that the price was to be paid in instalments, but fails to show the amount, or the time within which it was required by the terms of the contract to be paid. The record shows that by the 14th of February, 1867, O'Brien had paid Hull, as part of this purchase money, $473.40.

On August 1, 1869, nearly three years after the date of the contract, O'Brien, being in default in part of the purchase money, with the consent of Hull canceled the contract above mentioned, and a new arrangement was made between Hull, O Brien and William C. Morris, by which Hull gave Morris a contract to sell to him lot 102 for $775, and gave to O'Brien a contract to convey to him lot 101, upon the payment of $243 in addition to what had been paid upon the old contract. Soon after this Morris took possession of lot 102, under his contract, and has held possession ever since.

On the 14th September, 1869, the sheriff of Cook county,

professing to hold an execution against O'Brien upon a judgment rendered in the circuit court of that county, and in favor of Goodwillie & King, sold lots 101 and 102, as the property of O'Brien, to Elizabeth Goodwillie for $73.62, and issued to Elizabeth Goodwillie a certificate of sale, and afterwards on the 20th of December, 1870, the sheriff conveyed by deed this property to Carbine, as the assignee of Elizabeth Goodwillie, and this deed was filed for record May 20, 1872.

On the 14th of September, 1872, at the request of William C. Morris, Hull conveyed lot 102 to James Morris, and this deed was filed for record two days afterwards.

On the 23d of June, 1874, James Morris conveyed lot 102 to William C. Morris.

February 20, 1875, William C. Morris executed to James Morris a mortgage upon lot 102 to secure the sum of $900.

The bill in this case was filed May 26, 1876, by William C. Morris with James Morris, against Carbine, claiming to be the owner in fee of lot 102, and asking that the sheriff's deed to Carbine should be set aside as a cloud upon his title. Upon hearing, the circuit court granted the relief sought, and Carbine appeals to this court.

Mr. WILLIAM H. SISSON, for the appellant.

Messrs. ELA & PARKER, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The decree in this case must be affirmed. The complainant, Morris, shows a clear title to lot 102, and Carbine fails to show any valid claim against this property. The record fails to show that there was really any judgment in favor of Goodwillie and King, and against O'Brien. The recitals of the certificate of purchase in the sheriff's deed are not competent evidence to establish the judgment, and a judgment is a necessary foundation to the efficiency of such a deed. There is no intimation in the record as to the time when the supposed judgment was rendered, or became a lien upon the

property of O'Brien. If there was a valid judgment, and it was rendered after the original contract of October 18, 1866, between Hull and O'Brien had been canceled, and the contract in relation to lot 102 was made between Hull and William C. Morris, it is evident that O'Brien had ceased to have any interest of any kind in that lot, and there was nothing upon which the judgment could become a lien, or upon which the sheriff's deed could have any effect.

Even if a valid judgment were shown to have existed prior to the cancelling of the original contract between Hull and O'Brien, the purchaser at sheriff's sale would in such case, by the sheriff's deed, have taken the same right and interest (and no more) that O'Brien then held in the property. That right (if any existed) consisted in the right of O'Brien to demand of Hull a conveyance of both lots 101 and 102, upon the payment of the unpaid instalment of the purchase money.

Whether the terms of the contract were such that O'Brien at that time could have compelled a specific performance of that contract by Hull, does not appear. But assuming that Hull had waived the delay in payment, and that O'Brien at that time, December 20, 1870, (in the absence of the new arrangement made between Hull, O'Brien and Morris,) might have compelled a specific performance by Hull, this could only have been done by a bill, supported by proof, stating specifically the terms of the contract, and offering to pay to Hull the unpaid part of the purchase money.

In the most favorable view of the case Carbine simply acquired this right of O'Brien, and was thereby placed in his shoes, and to maintain a defence to this suit it was necessary for him in this case to set up in answer, and establish by proof, a case which would have enabled him to have maintained a bill for specific performance against Hull on the 26th of May, 1876. This he utterly failed to do.

The decree of the circuit court upon this record was right, and must be affirmed.

*Decree affirmed.*